IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 25, 2021

**STATE OF TENNESSEE v. JUSTIN RICHARD NORTON**

**Appeal from the Criminal Court for Bradley County**
**No. 19-CR-299     Andrew Mark Freiberg, Judge**

_____

**No. E2020-01652-CCA-R3-CD**

_____

The Defendant, Justin Richard Norton, pleaded guilty to one count each of aggravated assault, theft of property, evading arrest, resisting arrest, and violating an order of protection. *See* T.C.A. §§ 39-13-102 (2018) (subsequently amended) (aggravated assault); -13-113 (2018) (subsequently amended) (violation of order of protection); -14-103 (2018) (theft of property); -16-602 (2018) (resisting arrest); -16-603(a) (2018) (subsequently amended) (evading arrest). The Defendant received an agreed three-year, split-confinement sentence. The Defendant filed a motion to withdraw his guilty pleas, arguing that the pleas were made under duress and that the State failed to disclose exculpatory evidence pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). The trial court denied his motion. On appeal, the Defendant argues that the trial court erred by denying his motion. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and JILL BARTEE AYERS, JJ., joined.

Austin Brent Hayes, Athens, Tennessee (on appeal); Sheridan C. F. Randolph (at motion to withdraw guilty plea hearing), and Tim Hewitt (at guilty plea hearing), Cleveland, Tennessee; for the appellant, Justin Richard Norton.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Stephen D. Crump, District Attorney General; and Paul O. Moyle IV, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On April 12, 2019, the Defendant was arrested and charged with aggravated assault, theft of property, evading arrest, resisting arrest, and violating an order of protection. The Defendant represented himself during two hearings in general sessions court and filed a pro se motion for a speedy trial, which he later withdrew. The Defendant waived his right to a preliminary hearing, and on July 17, 2019, a Bradley County grand jury indicted the Defendant for the offenses. On August 12, 2019, the trial court appointed counsel, and the Defendant pleaded guilty as charged on December 9, 2019.

### Guilty Plea Hearing

At the guilty plea hearing, the Defendant asked for his case to be continued so that he had additional time to consider his guilty plea agreement, which the trial court denied. The court noted the State's offer of a probated sentence after service of nine months in confinement was an "extraordinarily merciful plea." The court allowed the Defendant an additional twenty minutes to discuss the offer with trial counsel and told the Defendant, "if you're not willing to accept responsibility for your conduct in a remorseful and penitent manner, if you can't see a good deal when one's come up, I will refuse to accept it." After consulting with counsel, the Defendant entered guilty pleas.

The Defendant testified that he understood his constitutional right to remain silent. The Defendant said that he was satisfied with trial counsel and that counsel reviewed discovery materials with the Defendant and discussed the strengths and weaknesses of the State's case. The Defendant said that counsel explained the defenses and that he understood that by pleading guilty he was waiving any factual or legal issues related to his case. The Defendant said counsel advised him that he could proceed to a jury trial if he wished. The Defendant said that counsel advised him of his potential punishment range and that he understood he faced the possibility of a much longer sentence if he proceeded to a jury trial. The court asked the Defendant if he knew that he faced a ten-year sentence on the aggravated assault charge alone, and the Defendant replied, "That convinced me, sir." The Defendant said that no one threatened or forced him to plead guilty, and he acknowledged that pleading guilty was in his best interest and that he desired to do so. The Defendant said that he was not under the influence of alcohol, drugs, or prescription medication and that he had never been diagnosed or treated for any mental disease or defect. He agreed he was pleading guilty knowingly, freely, and voluntarily. He acknowledged that he had pleaded guilty previously and that those experiences helped him understand the constitutional rights he waived by pleading guilty. The court explained the process of a jury trial, including the Defendant's presumption of innocence and the State's burden of proving guilt beyond a reasonable doubt. The Defendant said that he knew he had an "absolute right" to proceed to a jury trial. The Defendant said that he had reviewed the waiver of rights packet with counsel and that he understood all of the information. The

Defendant said that he understood he was waiving constitutional rights by signing the packet and that he was waiving his appellate rights.

The prosecutor set out the factual basis for the offenses: On April 12, 2019, Richard Norton, the Defendant's father, called the police, said that he and his wife had an order of protection against the Defendant, and reported that the Defendant was causing a disturbance at the Defendant's parents' house. Police officers arrived on the scene and observed the Defendant running through the house while holding a knife. The Defendant ran into the backyard, where police officers confronted him. The officers told the Defendant to drop the knife, but the Defendant refused and ran into the nearby woods. The officers chased the Defendant. The Defendant stopped running and threatened to stab one of the officers with an eleven and one-half inch "buck knife." The officers had the Defendant at gunpoint, but he began running again. The Defendant ran and swam through a creek before four officers eventually used a taser to stop the Defendant. When the Defendant was arrested, keys to a stolen Toyota 4Runner were found to be in the Defendant's possession.

At the conclusion of the hearing, the trial court accepted the Defendant's guilty pleas and sentenced the Defendant to an agreed three-year sentence, suspended to probation after the service of nine months in jail. The judgments were entered on December 9, 2019.

**Motion to Withdraw Guilty Pleas Hearing**

The Defendant filed a motion to withdraw his guilty pleas on January 8, 2020, alleging that (1) he suffered a manifest injustice because he was innocent, (2) the State failed to provide a list of witnesses whose testimony could exonerate the Defendant, and (3) the Defendant was coerced into pleading guilty because the trial court allowed him twenty minutes to consider whether to plead guilty. On October 28, 2020, the Defendant filed an amended motion on the basis that the State failed to disclose exculpatory evidence. A motion hearing was held on November 4, 2020.

Tammy Watkins with the Bradley County 9-1-1 Center identified an April 12, 2019 incident report regarding the Defendant. A disc containing the 9-1-1 "radio traffic" and telecommunications was received as an exhibit.

On the recorded call, Linda Norton, the Defendant's mother, said the Defendant was "acting crazy" and had stolen a car. Ms. Norton said that she and her husband had an order of protection against the Defendant. She said the Defendant was in the house, arguing with her husband. Ms. Norton said the Defendant might run into the woods. The recording reflects that the dispatch operator contacted the officers responding to the scene, and the officers said they observed the Defendant inside the house, holding a knife. An officer saw the Defendant go out the back door of the house. An officer said that the Defendant ran

behind the house and still held a knife. A few minutes later, an officer explained that the Defendant was in a creek, that the officers were having difficulty getting the Defendant out of the water, and that emergency medical personnel would have difficulty locating the officers because they were "so deep in the woods."

The Defendant testified that although he pleaded guilty, he was innocent. He explained that he pleaded guilty because he had exhausted all of his remedies. The Defendant said that he believed, had his case gone to trial, he would have been found guilty because he did not have evidence to support his assertions of innocence. The Defendant said that his retained counsel filed two discovery motions, which included a request for dash camera recordings, audio recordings, and anything that might support the Defendant's innocence. The Defendant said the State provided him with the affidavit, the arrest report, a list of witnesses, and the officers' written narrative regarding the incident. The Defendant said the discovery did not contain the 9-1-1 incident report. He explained that at the time he pleaded guilty, he believed the State had provided him with all of the evidence that could exonerate him. The Defendant said he was not aware that he could go to the 9-1-1 center and obtain the incident report. He explained that he did not learn he could get the report until after he had been released from jail. The Defendant said he learned more information after his guilty pleas and obtained a copy of the 9-1-1 report after submitting a written request to the county attorney's office. He said he examined the 9-1-1 report and found that it challenged the accuracy of the officers' handwritten narratives contained in the affidavit. The Defendant said he believed the 9-1-1 report was deliberately altered and there was "definitely a strong possibility" that the officers involved altered the recording. The Defendant said he would not have pleaded guilty if he had reviewed the 9-1-1 report beforehand.

The Defendant testified that after his guilty pleas, he became aware that there were additional officers and emergency medical personnel who were present at the scene of the Defendant's arrest of whom he was not aware before he pleaded guilty. The Defendant said that he was unable to examine these witnesses before his guilty pleas and that he believed the additional witnesses' testimony could help exonerate him. The Defendant said trial counsel told him that counsel had spoken to the officers involved in the incident and that they were "sticking to the narrative." The Defendant said counsel did not mention additional witnesses. He said counsel never discussed a best interest plea with him. The Defendant said that after he was released from jail, he retained a new attorney and filed a motion to withdraw his guilty pleas. The Defendant said that if the State had given him all of the evidence, he would have made an intelligent response and decision regarding his pleas. The Defendant said he would not have pleaded guilty if he had been given all of the evidence.

Following the hearing, the trial court filed a written order denying the Defendant's motion to withdraw his guilty pleas. The court found that the Defendant "knowingly,

freely[,] and intelligently" negotiated a guilty plea agreement. The court reasoned that the Defendant's claims of involuntariness were directly contradicted by the Defendant's testimony during the guilty plea colloquy. The court found that the Defendant's motion hearing testimony was uncorroborated and merited no relief. The court also noted the Defendant's intelligence and knowledge of the criminal justice system, based on a prior felony conviction, undermined the Defendant's claims of involuntariness. The court stated that the Defendant's guilty plea colloquy was thorough and "parsed through every issue and hesitancy," and that the Defendant had an opportunity to interact with the court and raise questions or concerns regarding the plea agreement. The court said that the Petitioner stated that his motivation for pleading guilty was to avoid risking a greater punishment. The court determined that there was no "error in the body of proof" and that the Defendant failed to meet his burden of establishing sufficient grounds for the withdrawal of his guilty pleas to correct a manifest injustice.

Regarding the Defendant's *Brady* violation claim, the trial court determined that the 9-1-1 incident report was not exculpatory. The Defendant did not present evidence at the motion hearing establishing how the report could be used to impeach the law enforcement officers involved in his case. Also, the Defendant did not establish that there was a factual discrepancy between the officers' reports and the 9-1-1 incident report. The court noted that according to *U.S. v. Ruiz*, 536 U.S. 622 (2002), the State was not required to disclose material impeachment evidence prior to entry of a guilty plea. The court concluded that the Defendant failed to show that the State withheld impeachment evidence and failed to establish materiality. Accordingly, the Defendant failed to show a "manifest just need" to withdraw his guilty pleas and was not entitled to relief. This appeal followed.

The Defendant contends that the trial court erred by denying the Defendant's motion to withdraw his guilty pleas because he suffered a manifest injustice. He argues that his pleas were not knowing and voluntary because he did not have access to the discovery against him and that the trial court pressured him into pleading guilty. Specifically, he argues that the State failed to disclose the 9-1-1 incident report and that the court pressured him into pleading guilty by denying his motion to continue the guilty plea hearing. The Defendant asserts that he would not have pleaded guilty because the 9-1-1 incident report revealed discrepancies between the incident report and the 9-1-1 audio recording. The State responds that the court did not err by denying the Defendant's motion to withdraw his guilty pleas because the Defendant did not establish that he suffered a manifest injustice. We agree with the State.

Tennessee Criminal Procedure Rule 32(f) states that after a trial court has imposed sentence but before a judgment becomes final, "the court may set aside the judgment of conviction and permit the defendant to withdraw the guilty plea to correct manifest injustice." Our supreme court has found manifest injustice when

(1) the plea "was entered through a misunderstanding as to its effect, or through fear and fraud, or where it was not made voluntarily"; (2) the prosecution failed to disclose exculpatory evidence as required by *Brady v. Maryland* . . . and this failure to disclose influenced the entry of the plea; (3) the plea was not knowingly, voluntarily, and understandingly entered; and (4) the defendant was denied the effective assistance of counsel in connection with the entry of the plea.

*State v. Crowe,* 168 S.W.3d 731, 742 (Tenn. 2005) (citations omitted). Once a defendant enters a guilty plea, the judgment of conviction "becomes final thirty days after acceptance of the plea agreement and imposition of [the] sentence," meaning a defendant "has thirty days within which to . . . [file] a motion to withdraw the previously entered plea pursuant to Rule 32(f)." *State v. Green*, 106 S.W.3d 646, 650 (Tenn. 2003). A trial court's determination regarding a motion to withdraw a guilty plea is reviewed for an abuse of discretion. *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010). An abuse of discretion occurs when a trial court "applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, . . . applies reasoning that causes an injustice to the complaining party . . . [and] fail[s] to consider the relevant factors provided by higher courts as guidance for determining an issue." *Id.*

The trial court found that the Defendant entered knowing and voluntary guilty pleas. The Supreme Court has concluded that a guilty plea must represent a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). A trial court must examine in detail "the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin v. Alabama*, 395 U.S. 238, 243-44 (1969); *see Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). Appellate courts examine the totality of circumstances when determining whether a guilty plea was voluntarily and knowingly entered. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). A guilty plea is not voluntary if it is the result of "[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats." *Boykin*, 395 U.S. at 242-43; *see Blankenship*, 858 S.W.2d at 904. A petitioner's representations and statements under oath that his guilty plea is knowing and voluntary create "a formidable barrier in any subsequent collateral proceedings [because] [s]olemn declarations . . . carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

The record reflects the Defendant entered knowing, voluntary, and intelligent guilty pleas. The Defendant argues that the trial court pressured him to plead guilty because the court allowed him twenty minutes to discuss the pleas with his trial counsel rather than granting the Defendant a continuance for the guilty plea hearing. After discussing the matter with counsel, the Defendant agreed to plead guilty. During the hearing, the court questioned the Defendant regarding his understanding of the charges against him, the

-6-

constitutional rights he waived by pleading guilty, and the possible sentences. At the hearing, the Defendant acknowledged that the favorable sentence in the guilty plea agreement "convinced" him not to proceed to a jury trial, where he faced a harsher punishment if convicted. The court asked the Defendant if he were under the influence of any substances at the time of the pleas and asked if the Defendant was satisfied with counsel's performance. The Defendant understood the charges and potential sentences, was satisfied with his counsel, was not under the influence of any substances, understood his guilty pleas, knowingly waived his rights, and pleaded guilty. The court noted the Defendant was literate and had no history of mental illness. The court determined that the Defendant was of average intelligence and that there was no evidence the stress of the guilty plea hearing "overwhelmed [the Defendant's] better, rational self and decision-making." The court determined that the Defendant had "above average experience with the criminal justice system" because the Defendant had previously pleaded guilty in a prior felony case, had filed a pro se motion for a speedy trial, wrote a lengthy letter to the court about his case, and used open records requests to attempt to obtain potentially exculpatory evidence. The court found that the Defendant was "a very thoughtful individual who knows the criminal justice system better than most" and was more familiar with the law than the average lay individual. The record supports the court's determination that the Defendant understood the guilty plea proceedings, understood the terms of the plea agreement, and entered knowing and voluntary pleas.

Regarding the Defendant's *Brady* violation claim, the trial court found the Defendant failed to show that the 9-1-1 incident report and potential witness testimony would have been exculpatory. The Due Process Clause of the Fourteenth Amendment to the United States Constitution and article I, section 8 of the Tennessee Constitution afford every criminal defendant the right to a fair trial. *See Johnson v. State*, 38 S.W.3d 52, 55 (Tenn. 2001). As a result, the State has a constitutional duty to furnish a defendant with exculpatory evidence pertaining to his guilt or lack thereof or to the potential punishment faced by a defendant. *See Brady*, 373 U.S. at 87.

In order to show a due process violation pursuant to *Brady*, the defendant must prove by a preponderance of the evidence that (1) he requested the information, unless it is obviously exculpatory, (2) the State must have suppressed the information, (3) the information must be favorable to the accused, and (4) the information must be material. *State v. Edgin*, 902 S.W.2d 387, 389 (Tenn. 1995). Favorable evidence includes that which "challenges the credibility of a key prosecution witness." *Johnson*, 38 S.W.3d at 56-57 (internal quotation marks and citation omitted). Evidence is material when "'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* at 58 (quoting *Edgin*, 902 S.W.2d at 390). Evidence that provides value for impeachment of a state's witness is within the purview of *Brady*. *State v. Jackson*, 444 S.W.3d 554 (Tenn. 2014); *see also United States v. Bagley*, 473 U.S. 667, 767 (1985); *Giglio v. United States*, 405 U.S. 150, 154 (1972).

The critical inquiry remains, though, whether the evidence was material. In this regard, the inquiry is whether a reasonable probability exists that "had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995); *see Edgin*, 902 S.W.2d at 391 (op. on pet. for reh'g).

In *Kyles*, the Supreme Court observed:

> [The] touchstone of materiality is a "reasonable probability" of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial."

*Kyles*, 514 U.S. at 434 (quoting *Bagley*, 473 U.S. at 678); *see Jackson*, 444 S.W.3d at 595.

Here, the Defendant argues that had the State provided him with a copy of the 9-1-1 incident report, he would not have pleaded guilty. However, the Defendant failed to show how the 9-1-1 incident report was material evidence. The Defendant argued that the 9-1-1 incident report contained the names of witnesses who would have bolstered his defense. He also argued that there were discrepancies between the incident report and the 9-1-1 audio recording. However, the Defendant did not call any of these potential witnesses to testify at the hearing. Moreover, the Defendant did not specify how the alleged discrepancies between the incident report and the 9-1-1 audio recording would be exculpatory evidence. Thus, the Defendant has not proven a *Brady* violation.

The trial court did not err by denying the Defendant's motion to withdraw his guilty pleas because his pleas were knowing and voluntary and because he did not establish a *Brady* violation when the State failed to provide him the 9-1-1 incident report. The Defendant failed to establish a manifest injustice required to withdraw his guilty pleas, and he is not entitled to relief. The judgments of the trial court are affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE